UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHELIA ASIEDU,<br><br>              Plaintiff,<br>v.<br><br>NEW JERSEY TRANSIT RAIL OPERATIONS, INC.,<br><br>              Defendant. | No. 2:21-CV-10911 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.**

      Plaintiff Shelia Asiedu brought this action against Defendant New Jersey Transit Rail Operations, Inc. ("NJT") pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51 ("FELA"). Before the Court is Plaintiff's motion ("Motion"), pursuant to Federal Rules of Civil Procedure 59(e) and 60(b), for reconsideration of this Court's August 11, 2023 Opinion and Order. ECF No. 44. For the reasons set forth below, Plaintiff's Motion is **DENIED**.

      **I.**      **BACKGROUND**

      The Court assumes familiarity with this matter, as discussed in this Court's August 11, 2023 Opinion and Order ("August Opinion") granting summary judgment in favor of NJT. ECF Nos. 41-42. Accordingly, the Court will discuss only relevant facts below.

      On November 24, 2019, Plaintiff was assigned as the rear brakeman on NJT's train 1752 when it reached the final stop of the line, Hoboken Station. After applying the handbrake and walking through the train to confirm that no passengers were still onboard, Plaintiff informed the conductor that she was going to exit the train and descended three stairs to the platform. The last step down from the train to the platform is "a little high[.]" Bossert Dep. 16:1-2. As she deboarded the train, Plaintiff asserts that she stepped onto the platform with her right foot, and thereafter placed her left foot onto the platform as well. When her left foot made contact, Plaintiff asserts that the platform crumbled and gave way under her foot. Plaintiff felt a sinking type of movement underneath her left foot, and her left leg then fell into the gap between the platform and the train. Plaintiff testified that she struck her left knee and experienced pain from her left knee up to her left hip. The two other crewmembers were still on the train when Plaintiff fell, but soon after exited the train and helped her to her feet. Photographs submitted by Dr. Carl Berkowitz, Plaintiff's

liability expert, show two divots in the edge of the platform where Plaintiff fell. Def.'s Ex. U at 1, 9-10, 12. Plaintiff brought this action on May 7, 2021, alleging that NJT violated FELA by failing to, inspect, maintain, repair, and warn Plaintiff about the purported unsafe conditions on the Track 13 platform. Compl. ¶ 15, ECF No. 1.

Ultimately, this Court granted NJT's motion for summary judgment in its August Opinion. The Court closely reviewed the surveillance video of Plaintiff's fall on the Track 13 platform frame-by-frame and concluded that there was no genuine issue of material fact as to whether Plaintiff placed her foot on the platform before she fell. A close review of the video indicated that, contrary to Plaintiff's testimony, it was clear that neither of Plaintiff's feet appeared on the platform before she fell. Def.'s Ex. K starting at 7:31:33. The Court also found that the video shows Plaintiff's upper body emerging first from the vestibule—at a forward angle—before her lower body, suggesting that she was already falling before she came out of the train. Accordingly, the Court held that a reasonable jury could not find that the condition of the Track 13 platform played any part in causing Plaintiff's injuries.

## II.   LEGAL STANDARD

A judgment may be "altered or amended" pursuant to Rule 59(e) "if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011) (citation, quotation marks, and emphasis omitted). The scope of a motion for reconsideration is "extremely limited" and should not be used as an "opportunity to relitigate the case." *Id.*

"Under Rule 60(b)(1), a court may grant relief on the basis of 'mistake, inadvertence, surprise, or excusable neglect.'" *Singleton v. Beadle*, 839 F. App'x 671, 673 (3d Cir. 2021). Rule 60(b)(6), on the other hand, "is a catch-all provision that authorizes a court to grant relief from a final judgment for 'any . . . reason' other than those listed elsewhere in the Rule." *Cox v. Horn*, 757 F.3d 113, 120 (3d Cir. 2014) (alteration in original). However, "courts are to dispense their broad powers under [Rule] 60(b)(6) only in 'extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur.'" *Id.* (citation omitted). The Third Circuit has emphasized that "Rule 60(b) is not a substitute for appeal." *Singleton*, 839 F. App'x at 673 (citation and quotation marks omitted).

## III.   DISCUSSION

Plaintiff makes three arguments in support of her Motion: (1) NJT misled the Court regarding the standard for the evaluation of video evidence on summary judgment; (2) the

2

surveillance video's pixel quality, frame rate, lighting, and view of the incident are not sufficient to draw an inference against a non-moving party; and (3) NJT's interpretation of the surveillance video improperly contradicts two witnesses and the laws of physics. Notably, none of these arguments were raised in Plaintiff's opposition brief to NJT's summary judgment motion despite having the opportunity to do so. The Court will not accept Plaintiff's attempts to have a "second bite at the apple" or "raise new issues with the benefit of the hindsight provided by the court's analysis." *O'Brien v. Compass Grp. USA, Inc.*, No. CV1713327, 2021 WL 11139421, at *2 (D.N.J. Jan. 26, 2021) (citations and quotation marks omitted). Additionally, the Court finds that none of Plaintiff's arguments demonstrate an intervening change in the relevant law, new evidence that was unavailable at the time this Court entered its order, or an error of fact or law that, if left uncorrected, would result in manifest injustice.

### A. Standard to Evaluate Video Evidence

Plaintiff first argues that NJT misrepresented the applicable legal standard regarding the evaluation of video evidence at the summary judgment stage. Specifically, Plaintiff asserts that NJT erroneously cited to numerous state court opinions and failed to make this Court "aware of contrary and binding precedent in the Third Circuit." Pl.'s Br. 5. In issuing the August Opinion, the Court did not rely on any state law cases erroneously cited in NJT's moving brief and was thus not "misled" by NJT. Additionally, the Court's opinion is consistent with applicable binding precedent. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Abiding by this authority, the Court held in its August Opinion that a frame-by-frame analysis of the surveillance video indicated that, contrary to Plaintiff's testimony that she contacted the Track 13 platform with both feet before she fell, "neither of Plaintiff's feet appear on the platform." Op. 5.

Plaintiff cites to several Third Circuit cases that have declined to follow *Scott* to argue that "the Third Circuit has consistently and continually reversed trial courts which have sought to grant summary judgment on the basis of video evidence." Pl.'s Br. 5-7. Plaintiff suggests that these cases set the applicable standard regarding the use of video evidence in the instant case. However, these cases are distinguishable because in each case, the video footage either failed to contradict the plaintiff's version of events or failed to capture entire parts of the conduct at issue.[1] While the Third Circuit has noted that "courts

---

[1] Specifically, Plaintiff cites to *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 192-93 (3d Cir. 2021) (noting that the security video failed to capture relevant conduct); *Patterson v. City of Wildwood*, 354 F. App'x 695, 698 (3d Cir. 2009) ("[T]he videotape in this case did not capture the incident[.]"); *Greene v. Kelly*, No. 20-2847, 2022 WL 1024611, at *2 (3d Cir. Apr. 6, 2022) ("[The video surveillance] does not contradict Greene's version of events."); and *Capra v. Knapp*, 788 F. App'x 864, 867 (3d Cir. 2019) ("A security camera captured the events in the processing room but not the events in the hallway, where Capra alleges he was kicked in the face.").

3

have declined to apply the limited exception set forth in *Scott v. Harris* where a videotape . . . does not capture the whole incident . . . , or where the videotape . . . is susceptible to multiple reasonable interpretations[,]" *Patterson*, 354 F. App'x at 698, these circumstances are not present here. Plaintiff's disagreement with this Court's finding on the issue, Pl.'s Br. 7, is not a suitable basis for a motion for reconsideration. *See Est. of Harrison v. Trump Plaza Hotel & Casino*, No. CIV. 12-6683, 2015 WL 3754996, at *1 (D.N.J. June 16, 2015) ("Reconsideration is not appropriate . . . where the motion only raises a party's disagreement with the Court's initial decision."). Thus, the Court's opinion is consistent with the applicable authority regarding the use of video evidence, and Plaintiff has failed to identify a relevant change in law, new evidence, an error of fact or law, or any other reason justifying relief.

### B. Technical Specifications of Surveillance Video

Plaintiff next asserts that it is not possible to discern any clear depiction of Plaintiff's fall from the surveillance video due to its pixel quality, lighting, and frame rate, and thus, it "does not meet the Third Circuit[']s strict standards regarding the quality of the video used to draw inferences against a non-moving party[,] Pl.'s Br. 7. Plaintiff cites to no expert testimony regarding the specifications of the video at issue, nor any legal authority in support of her proposition that video footage must abide by strict technical specifications to be considered as evidence. As such, Plaintiff's argument that this Court did not address these specifications in its August Opinion, Pl.'s Br. 8, does not warrant relief under Rules 59 and 60.[2]

### C. Witness Testimony

Lastly, Plaintiff alleges that NJT misrepresented the testimony of John Anderson and Arthur Bossert—the other two crewmembers on the train with Plaintiff—by stating that they did not observe Plaintiff proceeding down the train steps or her fall. Pl.'s Br. 9. Mr. Bossert testified that he saw Plaintiff's foot "keep going down" as she stepped out of the train, Bossert Dep. 10:8-21, and Mr. Anderson testified that while he did not see Plaintiff go down the steps or fall, when he was able to exit the train, he saw one of Plaintiff's legs caught in the gap in the platform while the other was above the platform, Anderson Dep. 10:11-19; 17:5-8. Plaintiff argues that because the crewmembers' testimony is consistent with her testimony that she fell vertically after the platform crumbled from the weight of her foot, the surveillance video cannot "decisively" contradict her version of the events. Pl.'s Br. 10. As discussed *supra*, the Court concluded that the surveillance video contradicted Plaintiff's testimony that her feet touched the platform before she fell. Op. 5. Neither Mr. Bossert nor Mr. Anderson testified about whether they

---

[2] Plaintiff's unfounded suggestion that NJT may have given the Court a different version of the surveillance video from the version produced in discovery is similarly meritless, as NJT certified that Exhibit K is a "true and correct copy of the NJT Transit Video Surveillance" when it filed its summary judgment motion. ECF No. 32-2 ¶ 12. The Court also cited to exact timestamps of the video in its August Opinion, which Plaintiff has not disputed. Op. 5.

saw Plaintiff's feet touch the platform before she fell. Thus, the Court finds this argument unpersuasive.

## IV.  CONCLUSION

For the reasons set forth above, Plaintiff's Motion is **DENIED**. An appropriate Order shall follow.

/s/ William J. Martini

WILLIAM J. MARTINI, U.S.D.J.

Date: February 15, 2024

5